EXCHANGE BANK OF MISSOURI, Appellant, v. WILLIAM H. RUSSELL, Respondent.

1. *Deeds of trust — Declarations of grantor — Conspiracy.*—To establish fraud on the part of the grantor in a deed of trust, his subsequent acts and declarations, if not too remote, may be shown. But they cannot be used against the beneficiary without first proving a fraudulent conspiracy between them to defraud the creditors of the grantor.

2. *Deeds of trust — Mistakes in — What will be corrected by a court of equity.* — Mistakes in deeds of trust, such as making the debt due the trustee instead of the beneficiary, and describing a bond, *e. g.*, secured by the deed as bearing even date with the deed, instead of being dated a few days prior thereto, are such as a court of equity will correct.

*Appeal from Clay Circuit Court.*

*Hall & Oliver* and *A. & T. A. Green*, for appellant.

*Crisman & Merryman*, for respondent.

ADAMS, Judge, delivered the opinion of the court.

This was an action to set aside a deed of trust made by the defendant Russell to Benjamin Holliday to secure a debt to the defendant James N. Simpson, upon the ground that the debt and trust were fraudulent as to creditors. The deed of trust covered large amounts of land in Lafayette and Johnson counties. The facts of the case, as they appear from the record, are about as follows: Jerome B. Simpson was the owner of 1237 shares of stock in the Central Overland California and Pike's Peak Express Company, and desired to dispose of his shares, as his health was bad, and he wanted to go to Europe. The defendant William H. Russell was a member of a firm that held a large amount of shares of the stock of this company, and did not want the stock belonging to Jerome B. Simpson to go into the hands of a stranger, and in June or July, 1860, commenced negotiating with him for his stock. The stock was considered worth fifty cents on the dollar, and Jerome finally agreed to take this amount for it, but wanted the money down. The defendant Russell was ready to secure the amount, but had not the money to pay for it, so James N. Simpson, the brother of Jerome, agreed to advance the money for the stock, or rather purchase it of his brother, at fifty cents on the dollar, and let defendant Russell have it at the same price. This agreement was made in October or November, 1860, and finally reduced to writing on the 24th of December, 1860, when the defendant Russell executed to the defendant Simpson his bond of that date, amounting to sixty odd thousand dollars, for the stock referred to, and agreed to secure the same by a deed of trust to be executed by him on lands in the counties of Lafayette and Johnson, in the State of Missouri, as soon as he could procure the numbers and description of the lands, the parties at that time being in the city of New York. The defendant Russell was arrested in New York at the instance of the United States and taken to Wash-

ington City, and while there under arrest, after procuring the numbers of the lands, executed the deed of trust to secure the bond he had given to defendant Simpson. This trust deed covered only a portion of the lands belonging to the defendant Russell, and in a day or two after executing this deed he made other deeds and bills of sale of real and personal property, which the proof shows were made to defraud his creditors. But there was no evidence to connect the defendant Simpson with these frauds, nor was there any evidence that he knew or had any information of the intention of Russell to make such deeds and bills of sale. The defendant Simpson paid his brother for the stock in a debt due to him from his brother for some $25,000, and the balance in money. The stock of the express company soon after this transaction became worthless, and may have been so at the time, but this was not known to the parties. In drawing the deed of trust to secure the debt to Simpson the draftsman made a clerical error in describing the debt to be due to the trustee, Holliday, instead of to the beneficiary, Simpson, and in describing the bond secured as bearing even date with the deed of trust, whereas it actually bore date and had been duly executed and delivered on the 24th day of December, 1860, several days before the execution of the deed of trust. These mistakes were duly proven by the evidence, but had not been discovered till after the institution of this suit.

The plaintiff offered to read in evidence a letter written by the defendant Russell to the plaintiff in 1866, in which he states, in effect, that Simpson's debt and trust were not real, but a mere pretense to cover up his property. This letter was excluded by the court. The plaintiff had taken and filed in the cause the deposition of said Russell, and offered to read certain parts of it, not as a deposition, but as admissions on the part of Russell. The court, however, refused to permit such parts of the depositions to be read as admissions. But before the case was closed the court ordered this deposition to be made a part of the case. In this deposition Russell explains the letter he had written to the plaintiff by saying it was not true; that he was under a mistake, and had in his mind another transaction in which the defendant Simpson was not concerned; that Simpson's debt and deed of trust were *bona fide*, etc.

The plaintiffs, in 1862, recovered in the Lafayette Circuit Court a judgment for some $25,000 against the defendant Russell and others, and had an execution on this judgment levied on the lands in dispute, and purchased the same at execution sale, took a sheriff's deed, and afterwards commenced this suit in the Lafayette Circuit Court to set aside the aforesaid deed of trust as fraudulent.

The case was taken by change of venue to Clay county, where issues were made up and referred to a jury touching the questions of fraud and the mistakes in the deed of trust, which were found for the defendants. The court then passed upon the whole case, regardless of the issues, and found for the defendant Simpson and rendered judgment for defendants, from which judgment the plaintiff has appealed to this court.

The letter of Russell, written to the plaintiff six years after he had created the debt and trust, ought not to be read in evidence against the defendant Simpson. A party who makes a deed of trust cannot afterwards impress the title with fraud by subsequent acts and declarations made for that purpose. It is true, to establish fraud in the grantor, his subsequent acts and declarations, if not too remote, may be shown. But in order to affect the grantee or beneficiary by such fraud, he must be connected with it. They must accept the deed to carry out the fraudulent intent of the grantor. The declarations of the grantor, made in the absence of the beneficiary, cannot be used against him without first proving a fraudulent conspiracy between them to defraud the creditors of the grantor.

This suit was brought to set aside this deed of trust as fraudulent. The plaintiff had purchased all the right, title and interest of Russell in the land, and Russell was not a necessary party to the suit, so that these declarations could not be used because of his being a defendant. Even if he could be treated as a necessary party, they could only be used against him, and not against his co-defendant Simpson. I have examined the record, and find no proof whatever to connect the defendant Simpson with the fraudulent deeds and bills of sale made by Russell. There is nothing in the record to show that Simpson had any knowledge or information that Russell intended to make any such deeds or bills of sale;

on the contrary, the evidence clearly shows that the whole transaction on the part of Simpson was real and *bona fide*. He bought the stock from his brother with the express understanding that Russell would take it at the same price; so the real consideration, so far as he is concerned, was what he paid for the stock, and not what the stock might have been worth. It cost him fifty cents on the dollar, and Russell agreed to take it at that price, and finally closed the trade by giving his bond, which he secured by this deed of trust. Fraud cannot be presumed, it must be proved. The mistake in the deed of trust is no evidence of fraud. It was clearly shown by the evidence, and is such a mistake as a court of equity will correct. The deed being duly recorded, imparted notice that a debt to that amount had been secured. As to who was the real owner of the debt, was a matter of no consequence to creditors or purchasers. As the debt really belonged to Simpson and not to Holliday, the trustee, a court of equity will protect him in his rights, and he may have the deed of trust foreclosed in equity and the land sold to pay his debt and interest.

Upon a review of the whole record, we think the judgment is right. Let it be affirmed. The other judges concur.